## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

STERLING D. BROWN,

        Plaintiff,

v.                                      Case No. 18-CV-922

CITY OF MILWAUKEE,
CITY OF MILWAUKEE CHIEF OF
POLICE ALFONSO MORALES, in his
Official capacity,
SERGEANT SEAN A. MAHNKE,
SERGEANT JEFFREY S. KRUEGER,
OFFICER JOSEPH J. GRAMS,
OFFICER BOJAN SAMARDZIC,
OFFICER JAMES P. COLLINS,
OFFICER CRISTOBAL MARTINEZ AVILA,
OFFICER ERIK A. ANDRADE, and
OFFICER JASON P. JENSEN,

        Defendants.

---

### ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANTS

---

NOW COMES Defendants, by their attorney, Grant F. Langley, City Attorney, by Assistant City Attorney Naomi E. Gehling, and Assistant City Attorney Elleny B. Christopoulos, as and for an Answer to Plaintiff's Complaint, admits, denies, alleges and states to the Court as follows:

### I. INTRODUCTION

1.    This is a civil rights action under 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights to be free of excessive force and unlawful arrest and for equal protection under the laws as secured by the Fourth and Fourteenth Amendments of the United States Constitution.

**ANSWERING PARAGRAPH NO. 1:** The allegations contained therein are legal

1

conclusions to which no answer is required; in the event that the Court determines that the

allegations require a response, lack knowledge or information sufficient so as to form a belief as

to the truth of the allegations contained therein.

## II. JURISDICTION AND VENUE

2.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §
        1331
 (federal question) and 28 U.S.C. § 1343 (civil rights).

**ANSWERING PARAGRAPH NO. 2**: The allegations contained therein are legal

conclusions to which no answer is required; in the event that the Court determines that the

allegations require a response, lack knowledge or information sufficient so as to form a belief as

to the truth of the allegations contained therein.

3.      Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because the
events and conduct giving rise to the Plaintiff's claims asserted herein occurred within
this judicial district.

**ANSWERING PARAGRAPH NO. 3**: The allegations contained therein are legal

conclusions to which no answer is required; in the event that the Court determines that the

allegations require a response, lack knowledge or information sufficient so as to form a belief as

to the truth of the allegations contained therein.

## III. PARTIES

4.      Sterling D. Brown, date of birth February 10, 1995, was 22 years old and at
all times relevant hereto was an adult citizen of the United States living at an apartment
in St. Francis, WI. Mr. Brown suffered severely on January 26, 2018 as a result of the
Defendants' unlawful conduct as alleged herein. Mr. Brown is African American.

**ANSWERING PARAGRAPH NO. 4:**  Lack knowledge or information sufficient so at

to form a belief as to the allegations contained therein, and therefore, deny the same.

5.      Defendant City of Milwaukee ("Milwaukee"), with offices of its executive at
        200
 E. Wells Street, Milwaukee, WI 53202, is and was at all times material hereto, a

2

Municipal Corporation organized under the laws of the State of Wisconsin. Milwaukee established, operated and maintained Milwaukee Police Department ("MPD") at all times material hereto; Milwaukee is ultimately responsible for the training, supervising, and discipline of MPD employees and the creation and implementation of its policies and procedures through its Chief of Police, currently Chief Alfonso Morales, and had ultimate control and authority over MPD and all Defendants, and pursuant to Wis. Stat. § 895.46, is obligated to indemnify all Defendants in this action.

**ANSWERING PARAGRAPH NO. 5**: The allegations contained therein are legal conclusions to which no answer is required.

6.      Defendant Alfonso Morales ("Morales") is the Police Chief of the Milwaukee Police Department. In that capacity he oversees the MPD. By law, custom, de-facto or otherwise, and/or delegation, he has policymaking authority over the police department for all actions at issue in this case. He is responsible for ensuring that the policies and practices of the MPD comply with federal and state requirements for the treatment of citizens like the Plaintiff. He is sued in his official capacity for all the constitutional claims at issue arising out of Plaintiff's unlawful racially motivated and excessive force arrest and detention. At all times relevant to this action, Morales was acting under color of law and within the scope of his employment with the MPD or Milwaukee.

**ANSWERING PARAGRAPH NO. 6**: Admit the allegations contained in the first, second and last sentence of this paragraph. As to the remaining allegations, these allegations are legal conclusions to which no answer is required; in the event that the Court determines that the allegations require a response, lack knowledge or information sufficient so as to form a belief as to the truth of the allegations contained therein

7.      Defendant Sergeant Sean A. Mahnke ("Mahnke") is an adult citizen of the State of Wisconsin and a resident of the State of Wisconsin. Defendant Mahnke was a sergeant with MPD at all times relevant to this action and was acting under color of law and within the scope of his employment with the MPD or Milwaukee at all times relevant hereto.

**ANSWERING PARAGRAPH NO. 7:** Admit the allegations contained therein.

8.      Defendant Sergeant Jeffrey S. Krueger ("Krueger") is an adult citizen of the State of Wisconsin and a resident of the State of Wisconsin. Defendant Krueger was a sergeant with MPD at all times relevant to this action and was acting under color of law and within the scope of his employment with the MPD or Milwaukee at all times relevant hereto.

**ANSWERING PARAGRAPH NO. 8**: Admit the allegations contained therein.

3

9. Upon information and belief, Krueger has been involved with at least eight (8) Use of Force incidents involving his Taser prior to the occurrence of the subject matter of this complaint, including the deployment of his Taser in four (4) incidents that did not result in charges being brought against his victims.

**ANSWERING PARAGRAPH NO. 9**: Admit that Defendant Krueger was involved in at least eight (8) use of force incidents involving his taser. As to the remaining allegations, lack knowledge or information sufficient so at to form a belief as to the allegations contained therein, and therefore, deny the same.

10. Defendant Police Officer Joseph J. Grams ("Grams") is an adult citizen of the State of Wisconsin and a resident of the State of Wisconsin. Defendant Grams was a police officer with MPD at all times relevant to this action and was acting under color of law and within the scope of his employment with the MPD or Milwaukee at all times relevant hereto.

**ANSWERING PARAGRAPH NO. 10**: Admit the allegations contained therein.

11. Defendant Police Officer Bojan Samardzic ("Samardzic") is an adult citizen of the State of Wisconsin and a resident of the State of Wisconsin. Defendant Samardzic was a police officer with MPD at all times relevant to this action and was acting under color of law and within the scope of his employment with the MPD or Milwaukee at all times relevant hereto.

**ANSWERING PARAGRAPH NO. 11**: Admit the allegations contained therein.

12. Defendant Police Officer James P. Collins ("Collins") is an adult citizen of the State of Wisconsin and a resident of the State of Wisconsin. Defendant Collins was a police officer with MPD at all times relevant to this action and was acting under color of law and within the scope of his employment with the MPD or Milwaukee at all times relevant hereto

**ANSWERING PARAGRAPH NO. 12**: Admit the allegations contained therein.

13. Defendant Police Officer Cristobal Martinez Avila ("Avila") is an adult citizen of the State of Wisconsin and a resident of the State of Wisconsin. Defendant Avila was a police officer with MPD at all times relevant to this action and was acting under color of law and within the scope of his employment with the MPD or Milwaukee at all times relevant hereto.

**ANSWERING PARAGRAPH NO. 13**: Admit the allegations contained therein.

14.    Defendant Police Officer Erik A. Andrade ("Andrade") is an adult citizen of the State of Wisconsin and a resident of the State of Wisconsin. Defendant Andrade was a police officer with MPD at all times relevant to this action and was acting under color of law and within the scope of his employment with the MPD or Milwaukee at all times relevant hereto.

**ANSWERING PARAGRAPH NO. 14**: Admit the allegations contained therein.

15.    Defendant Police Officer Jason P. Jensen ("Jensen") is an adult citizen of the State of Wisconsin and a resident of the State of Wisconsin. Defendant Jenson was a police officer with MPD at all times relevant to this action and was acting under color of law and within the scope of his employment with the MPD or Milwaukee at all times relevant hereto.

**ANSWERING PARAGRAPH NO. 15**: Admit the allegations contained therein.

## IV. GENERAL FACTUAL ALLEGATIONS

### A.    BACKGROUND

16.    Plaintiff realleges and incorporates by reference the allegations of all the preceding paragraphs.

**ANSWERING PARAGRAPH NO. 16**: Reallege and incorporate herein by reference as though fully set for herein the defendants' answers to all of the preceding paragraphs

17.    Violence by law enforcement against African American people in the United States is a national crisis. See Jennifer Bjorhus & MaryJo Webster, *Convicted But Still Policing*, StarTribune (Oct. 1, 2017, 12:00 AM), http://www.startribune.com/minnesota-police-officers-convicted-of-serious-crimes-still-on-the-job/437687453/; Amanda Claire Curcio & Hunter Field, *Deadly Force: In 6 years, 53 blacks shot by police in Arkansas, Arkansas Online* (Mar. 13, 2017, 4:30 AM), http://www.arkansasonline.com/news/2017/mar/13/6-years-53-blacks-shot/; Wesley Lowery, *Police are still killing black people. Why isn't it news anymore?*, Wash. Post (Mar. 16, 2018), http://wapo.st/2p9NWyW?tid=ss_sms-amp; Carol Marbin Miller, *Fight Club: A Miami Herald Investigation Into Florida's Juvenile Justice System*, MiamiHerald, http://www.miamiherald.com/news/special-reports/florida-prisons/article176773291.html; Ben Montgomery, *Why Cops Shoot*, Tampa Bay Times (Apr. 5, 2017), http://www.tampabay.com/projects/2017/investigations/florida-police-shootings/why-cops-shoot/; Eugene Scott, *Police Shootings of unarmed black people have not ended. But top-level political conversations about them have.*, Wash. Post (March 22, 2018) http://wapo.st/2FXiQG0?tid=ss_sms-amp.

**ANSWERING PARAGRAPH NO. 17**: Deny that the allegation is a full, complete, and

correct citation or explanation as to the content or effect of the document; to the extent the allegation quotes newspaper articles, assert that newspaper articles constitute inadmissible hearsay, and newspaper articles cannot be used to determine facts in this case; lack information and knowledge necessary to form a belief as to the truth or falsity of the remaining allegations, and therefore deny the same.

18. In July of 2016, the Washington Post began tracking all police shootings, since 2015, wherein a police officer, in the line of duty, shot and killed a civilian. See Julie Tate et al., *How The Washington Post is Examining police shootings in the United States*, Wash. Post (July 7, 2016), https://www.washingtonpost.com/national/how-the-washington-post-is-examining-police-shootings-in-the-united-states/2016/07/07/d9c52238-43ad-11e6-8856-f26de2537a9d_story.html?utm_term=.e377a9bae1f7.

**ANSWERING PARAGRAPH NO. 18**: Deny that the allegation is a full, complete, and correct citation or explanation as to the content or effect of the document; to the extent the allegation quotes newspaper articles, assert that newspaper articles constitute inadmissible hearsay, and newspaper articles cannot be used to determine facts in this case; lack information and knowledge necessary to form a belief as to the truth or falsity of the remaining allegations, and therefore deny the same.

19. According to the Washington Post's data, since January 1, 2015 233 people have been shot and killed by a police officer while unarmed.

**ANSWERING PARAGRAPH NO. 19**: Deny that the allegation is a full, complete, and correct citation or explanation as to the content or effect of the document; to the extent the allegation quotes newspaper articles, assert that newspaper articles constitute inadmissible hearsay, and newspaper articles cannot be used to determine facts in this case; lack information and knowledge necessary to form a belief as to the truth or falsity of the remaining allegations, and therefore deny the same.

20. This imbalance in violence against African Americans by police officers is

6

particularly rampant in the State of Wisconsin. Mesic et al., *The Relationship Between Structural Racism and Black-White Disparities in Fatal Police Shootings at the State Level*, 110, Journal of the National Medical Association, 106, 110 (2018).

**ANSWERING PARAGRAPH NO. 20**: Deny that the allegation is a full, complete, and correct citation or explanation as to the content or effect of the document; to the extent the allegation quotes newspaper articles, assert that newspaper articles constitute inadmissible hearsay, and newspaper articles cannot be used to determine facts in this case; lack information and knowledge necessary to form a belief as to the truth or falsity of the remaining allegations, and therefore deny the same

21.     In Wisconsin, over fifteen unarmed African Americans are shot by police officers for every individual unarmed white person shot by a police officer. *Id.*

**ANSWERING PARAGRAPH NO. 21**: Deny that the allegation is a full, complete, and correct citation or explanation as to the content or effect of the document; to the extent the allegation quotes newspaper articles, assert that newspaper articles constitute inadmissible hearsay, and newspaper articles cannot be used to determine facts in this case; lack information and knowledge necessary to form a belief as to the truth or falsity of the remaining allegations, and therefore deny the same.

22.     The specific ratio of unarmed African Americans shot by police in Wisconsin compared to unarmed white people shot by police in Wisconsin is 15.91:1. *Id.*

**ANSWERING PARAGRAPH NO. 22**: Deny that the allegation is a full, complete, and correct citation or explanation as to the content or effect of the document; to the extent the allegation quotes newspaper articles, assert that newspaper articles constitute inadmissible hearsay, and newspaper articles cannot be used to determine facts in this case; lack information and knowledge necessary to form a belief as to the truth or falsity of the remaining allegations, and therefore deny the same.

7

23.     This ratio – 15.91:1 – is the second highest ratio in the entire country and is over  three times the national average of 4.53:1. *Id.* at 111.

**ANSWERING PARAGRAPH NO. 23**:  Deny that the allegation is a full, complete, and correct citation or explanation as to the content or effect of the document; to the extent the allegation quotes newspaper articles, assert that newspaper articles constitute inadmissible hearsay, and newspaper articles cannot be used to determine facts in this case; lack information and knowledge necessary to form a belief as to the truth or falsity of the remaining allegations, and therefore deny the same.

24.     Compounding this issue, Wisconsin outranks the rest of the country in its State Racism Index score–a numerical representation of structural racism. *Id.* at 110.

**ANSWERING PARAGRAPH NO. 24**:  Deny that the allegation is a full, complete, and correct citation or explanation as to the content or effect of the document; to the extent the allegation quotes newspaper articles, assert that newspaper articles constitute inadmissible hearsay, and newspaper articles cannot be used to determine facts in this case; lack information and knowledge necessary to form a belief as to the truth or falsity of the remaining allegations, and therefore deny the same.

25.     Thus, tragically, both economically and socially, Wisconsin is a particularly hostile location for African Americans in general, and specifically with regards to their interactions with police and police violence.

**ANSWERING PARAGRAPH NO. 25**:  Deny the allegations contained therein.

26.     On February 22, 2017 a class action, U.S.D.C. Eastern District of Wisconsin Case No. 17-CV-00234-JPS, was filed against Milwaukee alleging Milwaukee's policies, practices,  and customs related to stops and frisks by MPD violated the United States Constitution by: (1) authorizing MPD officers to stop people without individualized, objective, and articulable reasonable suspicion of criminal conduct in violation of the Fourth Amendment to the U.S. Constitution; (2) authorizing MPD officers to frisk people without individualized, objective, and  articulable reasonable suspicion that the person is armed and dangerous in violation of the Fourth  Amendment to the U.S. Constitution; and (3) sustaining stops and frisks of African American
and Latino people that involve racial and ethnic profiling, or are otherwise motivated by race

8

and ethnicity, rather than reasonable suspicion of criminal conduct in violation of the Fourteenth Amendment to the U.S. Constitution, among others.

**ANSWERING PARAGRAPH NO. 26**: Admit that such a case was filed in the

U.S.D.C. Eastern District of Wisconsin, but deny any wrongdoing.

27. To date, Milwaukee denies all such claims (as set out in proposed but yet unsigned Settlement Agreement and Consent Decree in said action).

**ANSWERING PARAGRAPH NO. 27**: Admit that the City of Milwaukee denies all

claims set forth in Case No. 17-CV-00234-JPS, but deny that the Settlement Agreement and

Consent Decree is unsigned.

28. The City of Milwaukee's police officers, including the individual Defendants, are allegedly trained, including through the MPD's Standard Operating Procedures, that, among others:

- When a police officer stops a driver for violating a traffic law, the driver may only be asked questions reasonably related to the nature of the traffic violation. Absent an articulable suspicion that the driver has committed or is about to commit a crime, no further questions are allowed and all questions must bear a reasonable relationship to the traffic violation at issue.
- The use of force by a police member must be objectively reasonable. Police members shall use only the force necessary to effectively maintain control of a situation and protect the safety of police members and the public.
- Force intended or likely to cause great bodily harm may only be used if reasonable under all the circumstances then existing to prevent great bodily harm or death to the officer or a third party.
- Any officer who personally observes another officer using force, which the observing officer believes to be beyond that which is objectively reasonable under the circumstances, shall reasonably attempt to intervene to prevent the use of such excessive force, if the observing officer is in a position to do so, and if any such
  intervention does not jeopardize safety. **A failure to intervene in any unreasonable use of force, when there is an opportunity to do so, demonstrates a lack of courage, and a violation of the Code of Conduct.**
- An Electronic Control Device (ECD, or Taser) utilizes propelled wires, or direct contact, to conduct electrical energy to affect the sensory and motor functions of the nervous system, disrupting the body's ability to communicate messages from the brain to the muscles, causing temporary motor skill dysfunction (neuro muscular incapacitation) to the human being.
- Electronic control devices should not be used in an unjustified manner.
- Electronic control devices should not be used against people who are

9

offering only passive and/or verbal resistance.

- In general, the only persons arrested for traffic citations are for O.W.I.
- Arrest is defined as "[t]aking or detaining of a person by word or action into custody so as to subject their liberty to the actual control and will of the person making the arrest."
- Probable Cause is defined as "[t]hat quantum of evidence which would lead a reasonable police officer to believe that the Defendant committed a crime."
- An officer may make an arrest without a warrant if the officer has probable cause to believe a person is committing or has committed a crime.
- Race should not determine the decision to arrest or not arrest.

**ANSWERING PARAGRAPH NO. 28**: Admits that the City of Milwaukee trains officers in the requirements and provisions of the MPD's Standard Operating Procedures; to the extent that anything in this paragraph does not accurately summarize and reflect those standard operating procedures, deny the allegations contained therein.

## B. UNLAWFUL ARREST, EXCESSIVE USE OF FORCE, AND DETENTION OF MR. BROWN

29. Plaintiff realleges and incorporates by reference the allegations of all the preceding paragraphs.

**ANSWERING PARAGRAPH NO. 29**: Reallege and incorporate herein by reference as though fully set for herein the defendants' answers to all of the preceding paragraphs.

30. On January 26, 2018, at around 2:00 AM, Mr. Brown arrived at the Walgreens location at 2625 West National Avenue, Milwaukee, Wisconsin. It was a chilly morning–the wind chill hovered around 26 degrees Fahrenheit.

**ANSWERING PARAGRAPH NO. 30**: Lack knowledge or information sufficient so at to form a belief as to the allegations contained therein, and therefore, deny the same.

31. Mr. Brown parked his loaner Mercedes-Benz in a handicapped parking area while he quickly popped inside of the Walgreens.

**ANSWERING PARAGRAPH NO. 31**: Lack knowledge or information sufficient so at to form a belief as to the allegations contained therein, and therefore, deny the same

10

32. While Mr. Brown was inside of the Walgreens, Defendant Grams parked his MPD police wagon in the same, virtually empty, Walgreens parking lot where Mr. Brown parked his vehicle.

**ANSWERING PARAGRAPH NO. 32**: Admit the allegations contained therein.

33. Grams exited his police wagon, squad no. 2390, and walked towards Mr. Brown's vehicle.

**ANSWERING PARAGRAPH NO. 33**: Admit the allegations contained therein.

34. While walking towards the building, Grams activated his Body Worn Video Camera ("BWVC"). Grams' BWVC, and the BWVC of the other Defendants and vehicle video, captured a significant portion of the unlawful events that took place in the parking lot that morning. The times noted herein are best estimates from videos from scene given the limited information obtained to date.

**ANSWERING PARAGRAPH NO. 34**: Admit that there is body worn camera

footage from several officers; as to the remainder of this paragraph, deny the allegations

contained therein.

35. Mr. Brown exited the Walgreens at 02:03:17 AM, and returned toward his vehicle, and he noticed an individual, alone, waiting for him outside of his vehicle.

**ANSWERING PARAGRAPH NO. 35**: Lack knowledge or information sufficient so

at to form a belief as to the allegations contained therein, and therefore, deny the same.

36. As Mr. Brown made his way around the front of his vehicle, the individual marched towards Mr. Brown and positioned himself directly in front of Mr. Brown's body, between Mr. Brown and the driver's side door of his vehicle. This individual was Defendant Grams.

**ANSWERING PARAGRAPH NO. 36**: Admit that Defendant Grams was the first

police officer to interact with Plaintiff; as to the remainder of this paragraph, deny the

allegations contained therein.

37. Under Wis. Stat. § 968.24, "[a]fter having identified himself or herself as a law enforcement officer, a law enforcement officer may stop a person in a public place for a
reasonable period of time when the officer reasonably suspects that such person is committing, is about to commit or has committed a crime, and may demand the name and address of the

person and an explanation of the person's conduct."

**ANSWERING PARAGRAPH NO. 37**: The allegations contained therein are legal

conclusions to which no answer is required.

38. Parking improperly in a handicapped space is not considered a crime in Wisconsin. According to Police Chief Alfonso Morales, Grams was to have simply issued Mr. Brown a citation for the parking violation (see page 3 of the Chief's Complaint to the Board of Fire and Police Commissioners of the City of Milwaukee dated May 21, 2018 attached hereto as Exhibit A).

**ANSWERING PARAGRAPH NO. 38**: As to the first sentence of this paragraph, the

allegation is a legal conclusion to which no answer is required. As to the second sentence, deny

that the allegation is a full, complete, and correct citation or explanation as to the content or

effect of the document, and therefore deny the same. Assert that Plaintiff mischaracterizes the

Chief's Complaint and that the document speaks for itself.

39. Defendant Grams never identified himself as a law enforcement officer, or otherwise introduced himself in any way to Mr. Brown.

**ANSWERING PARAGRAPH NO. 39**: Deny the allegations contained therein.

40. Instead, at 02:03:21 AM, Defendant Grams immediately began to question Mr. Brown. Defendant Grams demanded that Mr. Brown produce a driver's license and then yelled at Mr. Brown to back away from his own car.

**ANSWERING PARAGRAPH NO. 40**: Deny the allegations contained therein.

41. Approximately ten seconds after first approaching Mr. Brown, and before Mr. Brown had any reasonable opportunity to respond to Defendant Grams' demands, Defendant Grams unlawfully shoved Mr. Brown.



**ANSWERING PARAGRAPH NO. 41**:  Deny the allegations contained therein.

42.     Mr. Brown remained calm and peaceful, backed away from Defendant Grams,  and made no attempt to enter his vehicle.

**ANSWERING PARAGRAPH NO. 42**:  Deny the allegations contained therein.

43.     Defendant Grams again never identified himself as a law enforcement officer as  required by Wis. Stat. § 968.24.

**ANSWERING PARAGRAPH NO. 43**:  The allegations contained therein are legal conclusions to which no answer is required; in the event that the Court determines that the allegations require a response, deny the allegations contained therein.

44.     Less than thirty seconds after Defendant Grams first approached Mr. Brown,  Defendant Grams phoned dispatch and requested backup.

**ANSWERING PARAGRAPH NO. 44**:  Deny the allegations contained therein.

45.     While Defendant Grams called in his request for backup, Mr. Brown waited  quietly.

**ANSWERING PARAGRAPH NO. 45**:  Deny allegations as a mischaracterization of the facts and affirmatively assert that the video footage from the officers' body worn cameras

13

speaks for itself.

46. After contacting dispatch, Defendant Grams returned to Mr. Brown again, telling him to "back up!" in a loud voice.

**ANSWERING PARAGRAPH NO. 46**: Deny allegations as a mischaracterization of the facts and affirmatively assert that the video footage from the officers' body worn cameras speaks for itself.

47. Mr. Brown asked Defendant Grams, "for what?"

**ANSWERING PARAGRAPH NO. 47**: Admit the allegations contained therein.

48. Defendant Grams deceptively accused Mr. Brown of obstructing, and then told Mr. Brown "**I'll do what I want, alright? I own this right here.**"

**ANSWERING PARAGRAPH NO. 48**: Deny allegations as a mischaracterization of the facts and affirmatively assert that the video footage from the officers' body worn cameras speaks for itself.

49. Mr. Brown replied, "You don't own me, though."

**ANSWERING PARAGRAPH NO. 49**: Admit the allegations contained therein.

50. Even when Mr. Brown offered reasonable answers or responses to the questions that Defendant Grams shouted at him, Defendant Grams refused to acknowledge Mr. Brown's answers or otherwise chose to imply that Mr. Brown was refusing to answer questions or somehow resisting.

**ANSWERING PARAGRAPH NO. 50**: Deny the allegations contained therein.

51. For example, in the following exchange captured on Defendant Grams' BWVC Defendant Grams even refused to acknowledge his name and then exacerbated the situation by falsely accusing Mr. Brown of behaving improperly:

Defendant Grams:        What's your name – what's your

name? Mr. Brown:        It's on there, Sterling Brown.

Defendant Grams:        I'm asking you.

| Mr. Brown: | I'm telling you, Sterling |
| Brown. Defendant Grams: | These are simple questions, |

man.

| Mr. Brown: | No, I'm answering them. I ain't got no problems, but you're touching me. |
| Defendant Grams: | These are simple questions, and you're being – and you're being like – and you're being all bad ass to me, alright?" |
| Mr. Brown: | I am not, but you touched me. |
| Defendant Grams: | I asked you a question so I could verify this okay – you don't think I see these that are – whatever – fake, so I'm asking your name. |

**ANSWERING PARAGRAPH NO. 51**: Deny allegations as a

mischaracterization of the facts and affirmatively assert that the video footage from the

officers' body worn cameras speaks for itself.

52.    Defendant Grams continued to aggressively question Mr. Brown about the parking issue outside of Mr. Brown's vehicle for another two minutes.

**ANSWERING PARAGRAPH NO. 52**: Deny allegations as a mischaracterization of

the facts and affirmatively assert that the video footage from the officers' body worn cameras

speaks for itself.

53.    During this time period, Defendant Grams began to misrepresent how the entire interaction began, only minutes earlier:

| Defendant Grams: | You look at me like I got something going on in my head, alright? |
| Mr. Brown: | No, I'm just saying you touched me – that's the initial – that's – that's my – |
| Defendant Grams: | Right, because you got up in my face, okay? |
| Mr. Brown: | I got up in *your* face? Really? Come on, bro. Come on. |

15

**ANSWERING PARAGRAPH NO. 53**: Deny allegations as a

mischaracterization of the facts and affirmatively assert that the video footage from the

officers' body worn cameras speaks for itself.

54. At 02:06:10 AM, three minutes after Defendant Grams first stopped Mr. Brown, several additional police vehicles, carrying additional police officers, arrived at the scene of this parking violation matter.

**ANSWERING PARAGRAPH NO. 54**: Admit that other police officers arrived at the

scene; deny the remaining allegation contained therein.

55. As the other officers arrived, Defendant Grams had yet to identify himself to Mr. Brown.

**ANSWERING PARAGRAPH NO. 55**: Admit the allegations contained therein.

56. The initial responding vehicles were MPD squad nos. 2420 (Avila); 2411 (Krueger); 2440 (Collins and Samardzic); 2311 (Mahnke); and 2340 (Andrade and Jensen).

**ANSWERING PARAGRAPH NO. 56**: Admit that the officers named in this

paragraph responded to the scene; deny any remaining allegation contained therein.

57. As the other Defendants arrived, Defendant Grams informed them that the situation was "no big deal" and that the presence of all the additional officers was unnecessary because he only needed to issue a ticket and wanted only one squad.

**ANSWERING PARAGRAPH NO. 57**: Deny allegations as a mischaracterization of

the facts and affirmatively assert that the video footage from the officers' body worn cameras

speaks for itself.

58. Rather than order the responding officers to immediately leave the scene, Sgts. Mahnke and Krueger allowed all the other Defendants to stay and they exited their vehicles and approached Mr. Brown.

**ANSWERING PARAGRAPH NO. 58**: Assert that the word "they" is vague as to

whom it is describing; deny allegations as a mischaracterization of the facts.

59. The questioning of Mr. Brown continued outside of his vehicle, allegedly

16

over a parking violation.

**ANSWERING PARAGRAPH NO. 59**: Deny allegations as a mischaracterization of the facts and affirmatively assert that the video footage from the officers' body worn cameras speaks for itself.

60.    As the questioning pressed on, Defendants began to surround Mr. Brown outside of his vehicle.

**ANSWERING PARAGRAPH NO. 60**: Deny allegations as a mischaracterization of the facts and affirmatively assert that the video footage from the officers' body worn cameras speaks for itself.

61.    Mr. Brown remained calm, never encroaching on the officers, or attempting to flee.

**ANSWERING PARAGRAPH NO. 61**: Deny the allegations contained therein.

62.    After informing other officers that the situation was "no big deal," Defendant Grams also walked back toward Mr. Brown.

**ANSWERING PARAGRAPH NO. 62**: Deny allegations as a mischaracterization of the facts and affirmatively assert that the video footage from the officers' body worn cameras speaks for itself.

63.    As Defendant Grams returned to Mr. Brown's vehicle, Mr. Brown's car alarm went off.

**ANSWERING PARAGRAPH NO. 63**: Admit the allegations contained therein.

64.    Mr. Brown reached into his pocket, grabbed his keys, and used the key fob to deactivate the alarm.

17



**ANSWERING PARAGRAPH NO. 64**: Lack knowledge or information sufficient so at

to form a belief as to the allegations contained therein, and therefore, deny the same.

65. Defendant Grams' BWVC captured Mr. Brown taking his hands in-and-out of his pockets while Defendants Krueger and Avila are visible questioning him.



**ANSWERING PARAGRAPH NO. 65**: Admit the allegations contained therein.

66. No officer surrounding Mr. Brown made any comments about the location of his hands while he was taking them in and out of his pockets.

**ANSWERING PARAGRAPH NO. 66**: Deny the allegations contained therein.

67. As is his constitutional right, Mr. Brown asked Defendant Krueger why he was being interrogated over a parking issue.

**ANSWERING PARAGRAPH NO. 67**: The allegations contained therein are legal

conclusions to which no answer is required; in the event that the Court determines that the

allegations require a response, lack knowledge or information sufficient so at to form a belief as

to the allegations contained therein, and therefore, deny the same.

68. Defendant Krueger responded to Mr. Brown, stating "because you're bothering me"; then threatened to tow his car away; and stated that Mr. Brown "should be in handcuffs."

**ANSWERING PARAGRAPH NO. 68**: Deny allegations as a mischaracterization of

the facts and affirmatively assert that the video footage from the officers' body worn cameras speaks for itself.

69.     Some seven-and-a-half minutes after Defendant Grams first initiated contact with Mr. Brown, and after Defendant Grams informed the other officers that the situation was "no big deal," requiring only a parking ticket, six officers continued to fully surround Mr. Brown. As they did so, Krueger peered in the driver's side rear window and Mahnke, on his way around Mr. Brown's vehicle to confront Mr. Brown, looked into the passenger's side rear window.

**ANSWERING PARAGRAPH NO. 69**: Deny allegations as a mischaracterization of the facts and affirmatively assert that the video footage from the officers' body worn cameras speaks for itself.

70.     Mahnke and Krueger both saw what appeared to be paper targets which had bullet holes in them.

**ANSWERING PARAGRAPH NO. 70**: Admit the allegations contained therein.

71.  Mahnke and Krueger both knew that a person has a 2nd Amendment right to carry guns. Both knew that it is legal and constitutional to have targets with bullet holes in your car.

**ANSWERING PARAGRAPH NO. 71**: Lack knowledge or information sufficient so at to form a belief as to the allegations contained therein, and therefore, deny the same.

72.     Mahnke and Krueger both knew that having paper targets with bullet holes in your car is not reasonable suspicion of any criminal conduct.

**ANSWERING PARAGRAPH NO. 72**: Lack knowledge or information sufficient so at to form a belief as to the allegations contained therein, and therefore, deny the same.

73.     Regardless of this knowledge, Defendants Mahnke and Krueger nodded to each other to signal their next move.

**ANSWERING PARAGRAPH NO. 73**: Lack knowledge or information sufficient so at to form a belief as to the allegations contained therein, and therefore, deny the same.

74.     Mr. Brown's hands had been back in his pockets for approximately one minute by the time the officers fully surrounded him.

19

**ANSWERING PARAGRAPH NO. 74**:  Lack knowledge or information sufficient so at to form a belief as to the allegations contained therein, and therefore, deny the same.

75.    Mr. Brown had not committed any crime, and there was no reason to suspect that Mr. Brown was in the process of committing a crime, or that he would ever commit a crime.

**ANSWERING PARAGRAPH NO. 75**:  The allegations contained therein are legal conclusions to which no answer is required; in the event that the Court determines that the allegations require a response, deny the allegations contained therein.

76.    Nonetheless, Defendant Mahnke again demanded: "What's your name sir?" Mr. Brown responded: "So what – like what are we doing? My name is Sterling Brown." Mahnke then asked: if "Okay – you don't have a CCW permit?"

**ANSWERING PARAGRAPH NO. 76**:  Deny allegations as a mischaracterization of the facts and affirmatively assert that the video footage from the officers' body worn cameras speaks for itself.

77.    Mr. Brown asked what a CCW was, then said no. Mahnke then demanded: "Do you have any guns?" Mr. Brown said "No." Nonetheless, both Krueger and Mahnke then essentially told Mr. Brown to "Take your hands out of your pockets." They made these statements at 02:10:48 AM.

**ANSWERING PARAGRAPH NO. 77**:  Deny allegations as a mischaracterization of the facts and affirmatively assert that the video footage from the officers' body worn cameras speaks for itself.

78.    As Defendant Mahnke shouted this statement, Defendant Samardzic pulled out his pistol.

**ANSWERING PARAGRAPH NO. 78**:  Deny allegations as a mischaracterization of the facts and affirmatively assert that the video footage from the officers' body worn cameras speaks for itself.

79.    Before Mr. Brown had any real opportunity to comply, and while Defendant Samardzic stood gun-in-hand, the other Defendant officers closed in on Mr.

20

Brown. By 02:10:51 AM, Defendant Krueger had grabbed Mr. Brown's left arm.

**ANSWERING PARAGRAPH NO. 79**: Deny allegations as a mischaracterization of the facts and affirmatively assert that the video footage from the officers' body worn cameras speaks for itself.

80.     At 02:11:05 AM Mr. Brown was kneed in the groin by one of the officers and the other Defendants surrounding Mr. Brown took control of his body and threw him to the pavement at about 02:11:09 AM.

**ANSWERING PARAGRAPH NO. 80**: Deny allegations as a mischaracterization of the facts and affirmatively assert that the video footage from the officers' body worn cameras speaks for itself.

81.     At 02:11:16 AM Mr. Brown screamed out in pain, "You got my neck!"

**ANSWERING PARAGRAPH NO. 81**: Lack knowledge or information sufficient so at to form a belief as to the allegations contained therein, and therefore, deny the same.

82.     A few seconds after being unlawfully forced to the ground by six police officers,  one officer can be heard on the BWVC asking if anyone has a Taser.

**ANSWERING PARAGRAPH NO. 82**: Deny allegations as a mischaracterization of the facts and affirmatively assert that the video footage from the officers' body worn cameras speaks for itself.

83.     While in complete physical submission laying on the ground with the officers on top of him, Mr. Brown feared for his life.

**ANSWERING PARAGRAPH NO. 83**: Lack knowledge or information sufficient so at to form a belief as to the allegations contained therein, and therefore, deny the same.

84.     At 02:11:20 AM Defendant Mahnke called out an order to tase Mr. Brown.

**ANSWERING PARAGRAPH NO. 84**: Lack knowledge as to the time reference contained therein, and therefore, deny the same; admit the remaining allegations contained

therein.

85. At 02:11:21 AM Defendant Samardzic, who had holstered his firearm, yelled, ""TASER! TASER! TASER!" and deployed his Taser into Mr. Brown's back.

**ANSWERING PARAGRAPH NO. 85**: Deny the allegations contained therein.

86. Several BWVCs capture Mr. Brown's agony while thousands of volts of electricity shot through his body.

**ANSWERING PARAGRAPH NO. 86**: Lack knowledge or information sufficient so

at to form a belief as to the allegations contained therein, and therefore, deny the same.

87. Shortly after Defendants threw Mr. Brown to the ground, Defendant Grams used his right foot to stomp on Mr. Brown's leg. Then after the Taser was shot into Mr. Brown's back, Defendant Grams proceeded to stomp on Mr. Brown's leg with both feet.



**ANSWERING PARAGRAPH NO. 87**: Deny allegations as a mischaracterization of

the facts and affirmatively assert that the video footage from the officers' body worn cameras

speaks for itself.

88. Defendant Grams stood on Mr. Brown's leg for an extended period of time while Mr. Brown remained on the ground.

**ANSWERING PARAGRAPH NO. 88**: Deny the allegations contained therein.

89. After Mr. Brown was unlawfully tackled, tased, and cuffed over an alleged parking incident, Defendant Grams commented to Defendant Krueger, "[i]f the guy hadn't been such a dick it would have been 'hey, have a nice day!' you know? But then I thought, okay he's being an ass, he's trying to hide something."

**ANSWERING PARAGRAPH NO. 89**: Deny the allegations contained therein.

90. At 02:11:38 AM, Defendants cuffed Mr. Brown, while he was face-down on the cold, wet pavement.

**ANSWERING PARAGRAPH NO. 90**:  Lack knowledge as to the time reference and description of the ground contained therein, and therefore, deny the same; admit that Plaintiff was handcuffed while on the ground and affirmatively assert that the video footage from the officers' body worn cameras speaks for itself.

91.     As he stood at the window of one of the police vehicles, Defendant Grams said to himself, "what is wrong with **these people**, man."

**ANSWERING PARAGRAPH NO. 91**:  Lack knowledge or information sufficient so at to form a belief as to the allegations contained therein, and therefore, deny the same.

92.     Starting at 02:13:49 AM, and continuing until 02:16:41 AM, Defendant Collins stood on Mr. Brown's left ankle for about 2¾ minutes, while Mr. Brown remained cuffed, laying on the cold wet pavement.

**ANSWERING PARAGRAPH NO. 92**:

93.     Minutes after being tased, Mr. Brown asked the officers, "all this for what?"

**ANSWERING PARAGRAPH NO. 93**:  Lack knowledge as to the time reference contained therein, and therefore, deny the same; admit the remaining allegations contained therein.

94.     Defendant Collins responded, "Because you're being stupid now."

**ANSWERING PARAGRAPH NO. 94**:  Lack knowledge or information sufficient so at to form a belief as to the allegations contained therein, and therefore, deny the same.

95.     At 02:17:00 AM, Defendant Samardzic asked Mr. Brown if he played for the Bucks.

**ANSWERING PARAGRAPH NO. 95**:  Deny the allegations contained therein.

96.     Seven (7) seconds after asking this question, Defendants permitted Mr. Brown to sit up.

**ANSWERING PARAGRAPH NO. 96**:  Deny the allegations contained therein.

97. When Mr. Brown sat up for the first time, at 02:17:07 AM, nearly six minutes had elapsed since Mr. Brown was first taken to the ground.

**ANSWERING PARAGRAPH NO. 97**: Lack knowledge as to the time reference contained therein, and therefore, deny the same; deny the remaining allegations contained therein.

98. After Defendant Krueger learned of Mr. Brown's professional status, at 02:21:28 AM, he commented to Mr. Brown, "I hope you guys make the playoffs – I like the Bucks. My kid loves the Bucks."

**ANSWERING PARAGRAPH NO. 98**: Lack knowledge as to the time reference contained therein, and therefore, deny the same; admit the remaining allegations contained therein.

99. Defendant Krueger asked Mr. Brown "[y]ou want to get off the wet pavement? We can stand you up. You want to stand up?"

**ANSWERING PARAGRAPH NO. 99**: Admit the allegations contained therein.

100. Mr. Brown stood up at 02:22:24 AM, nearly twelve minutes after he was first unlawfully attacked and thrown to the cold, wet pavement.

**ANSWERING PARAGRAPH NO. 100**: Lack knowledge as to the time reference contained therein, and therefore, deny the same; deny the remaining allegations contained therein.

101. While standing, Defendant Grams mocked Mr. Brown's life experience. He asked Mr. Brown, "I don't know – you been to Mars? You been to Venus? You been to the moon? Where – why – are you in school? What? Where you known at?"

**ANSWERING PARAGRAPH NO. 101**: Deny the allegations contained therein.

102. At 02:34:25 AM, Defendant Avila laughed with Defendant Samardzic, and commented "Good job."

**ANSWERING PARAGRAPH NO. 102**: Lack knowledge as to the time reference contained therein, and therefore, deny the same; deny the remaining allegations contained

therein.

103.    At 02:36:49 AM, after unlawfully placing Mr. Brown in custody, Defendants took Mr. Brown in an ambulance from the Walgreens parking lot to St. Francis Hospital for evaluation and treatment of his wounds.

**ANSWERING PARAGRAPH NO. 103**:  Deny the allegations contained therein.

104.    At 02:44:46 AM, Mr. Brown arrived at St. Francis Hospital with Defendants.  While there, he received treatment for his facial abrasions, and two puncture wounds in his mid-  back.



**ANSWERING PARAGRAPH NO. 104**:  Lack knowledge as to the time reference

contained therein, and therefore, deny the same; admit the remaining allegations contained

therein.

## C.    DEFENDANTS COLLABORATE TO CONCEAL THEIR ILLEGAL ARREST  AND USE OF EXCESSIVE FORCE AGAINST MR. BROWN.

105.    After Mr. Brown was taken in the ambulance, Defendants began to rehash the series of events that preceded Mr. Brown's take down and Defendant Samardzic's deploying a  Taser into Mr. Brown's back.

25

**ANSWERING PARAGRAPH NO. 105**:  Deny the allegations contained therein.

106.    At 02:49:13 AM, Defendant Krueger asked Defendant Collins, "did you have any – uh –  part in – uh – the decentralizing, or anything like that?"

**ANSWERING PARAGRAPH NO. 106**:  Lack knowledge as to the time reference contained therein, and therefore, deny the same; admit the remaining allegations contained therein.

107.    In response, Defendant Collins said "I think all of us did," and then cackled with laughter.

**ANSWERING PARAGRAPH NO. 107**:  Deny allegations as a mischaracterization of the facts and affirmatively assert that the video footage from the officers' body worn cameras speaks for itself.

108.    Minutes later, Defendant Collins then returned to stand by the vehicle occupied by Defendant Krueger and Defendant Mahnke.

**ANSWERING PARAGRAPH NO. 108**:  Admit the allegations contained therein.

109.    At that time, Defendant Krueger and Defendant Mahnke were reviewing the night's events. Defendant Collins asked "the bureau's coming out for this?"

**ANSWERING PARAGRAPH NO. 109**:  As to the first sentence, Lack knowledge or information sufficient so at to form a belief as to the allegations contained therein, and therefore, deny the same.  As to the second sentence, admit the allegations contained therein.

110.    In response, at 03:11:51 AM, Defendant Krueger told Defendant Collins, **"We're trying to protect ourselves."**

**ANSWERING PARAGRAPH NO. 110**:  Lack knowledge as to the time reference contained therein, and therefore, deny the same; admit the remaining allegations contained therein.

111.    Shortly thereafter, Defendant Mahnke, recognizing that the Defendants' conduct would be exposed for being a racist unlawful attack, and sitting next to Defendant Krueger, commented to Defendant Collins, "because he plays for the Bucks,

26

if he makes a fucking complaint, it's going to be a fucking media firestorm. And then any little fucking thing that goes wrong is going to be 'ooh Milwaukee Police Department is all racist' blah blah blah."

\

**ANSWERING PARAGRAPH NO. 111**: Deny the allegations contained therein.

112. Defendant Collins then entered the vehicle with Defendant Krueger and Defendant Mahnke.

**ANSWERING PARAGRAPH NO. 112**: Deny allegations as a mischaracterization of the facts and affirmatively assert that the video footage from the officers' body worn cameras speaks for itself.

113. As he entered, Defendant Krueger and Mahnke were on a telephone call with Defendant Grams. Defendants Mahnke and Krueger instructed Defendant Grams that the incident should be described as: "state resisting/obstruct."

**ANSWERING PARAGRAPH NO. 113**: Deny allegations as a mischaracterization of the facts and affirmatively assert that the video footage from the officers' body worn cameras speaks for itself.

114. While in the car, Defendant Collins then described Mr. Brown as "passive aggressive."

**ANSWERING PARAGRAPH NO. 114**: Deny allegations as a mischaracterization of the facts and affirmatively assert that the video footage from the officers' body worn cameras speaks for itself.

115. For nearly six minutes, Defendants Collins, Mahnke, and Krueger sat in the vehicle together, synchronizing their stories concerning what took place in the parking lot.

**ANSWERING PARAGRAPH NO. 115**: Deny the allegations contained therein.

116. Immediately after getting their story straight, Defendant Mahnke joked to Defendant Collins: "see you in the news!"

**ANSWERING PARAGRAPH NO. 116**: Deny the allegations contained therein.

117. At 03:11:51 AM, Defendant Collins laughed and replied, "can't wait for it to go to court!" Again, Defendant Collins cackled with laughter.

27

**ANSWERING PARAGRAPH NO. 117**: Lack knowledge as to the time reference contained therein, and therefore, deny the same; deny remaining allegations as a mischaracterization of the facts and affirmatively assert that the video footage from the officers' body worn cameras speaks for itself.

118.    Several defendants unlawfully searched Mr. Brown's vehicle.

**ANSWERING PARAGRAPH NO. 118**: Deny the allegations contained therein.

119.    Defendants repeatedly turned their BWVCs off and back on while Mr. Brown was in custody.

**ANSWERING PARAGRAPH NO. 119**: Deny allegations as a mischaracterization of the facts and affirmatively assert that the video footage from the officers' body worn cameras speaks for itself.

120.    For example, while Mr. Brown was receiving medical treatment at St. Francis Hospital, Defendant Grams answered a phone call, and then said "hold on a sec. Let me turn off my camera." Defendant Grams left his camera off for nearly five minutes.

**ANSWERING PARAGRAPH NO. 120**: Lack knowledge as to the time reference contained therein, and therefore, deny the same; admit the remaining allegations contained therein.

121.    Also, when Defendants Grams, Samardzic, and Avila moved Mr. Brown into a van to leave St. Francis Hospital, they decided together to shut off their BWVCs. As the doors to the van closed, Defendant Grams stated to Defendant Samardzic and Avila: "You guys hot?" Samardzic replied, "Pause the video." Defendant Grams repeated, "Are you guys running hot?" Samardzic replied "Hold on." After this exchange, the BWVCs of both Defendants Grams and Samardzic turned off.

**ANSWERING PARAGRAPH NO. 121**: Deny allegations as a mischaracterization of the facts and affirmatively assert that the video footage from the officers' body worn cameras speaks for itself.

122.    After concluding his medical treatment at 03:15:35 AM, Defendants

transferred Mr. Brown to the Milwaukee County Jail arriving at 03:22:17 AM. Mr. Brown remained there, unlawfully in custody, until his release later that day.

**ANSWERING PARAGRAPH NO. 122**: Deny allegations contained therein.

123. While at the Milwaukee County Jail, Defendant Mahnke questioned Mr. Brown while he remained under arrest.

**ANSWERING PARAGRAPH NO. 123**: Lack knowledge or information sufficient

so at to form a belief as to the allegations contained therein, and therefore, deny the same.

124. As a law enforcement officer, Mahnke knew that he had a constitutional duty to apprise Mr. Brown of his right against compulsory self-incrimination. At no time after his arrest did Defendants ever provide the required Miranda warning to Mr. Brown.

**ANSWERING PARAGRAPH NO. 124**: The allegations contained therein are legal

conclusions to which no answer is required; in the event that the Court determines that the

allegations require a response, deny the allegations contained therein; further, deny the

remaining allegations.

125. About the time Mr. Brown was being interrogated by Defendant Mahnke in the Milwaukee County Jail, Defendant Collins was still in the Walgreens parking lot.

**ANSWERING PARAGRAPH NO. 125**: Lack knowledge as to the time reference

contained therein, and therefore, deny the same; deny the remaining allegations contained

therein.

126. While in the parking lot, Defendant Collins placed a telephone call and while on the call, he referenced the need to go on overtime. Then, at 03:27:54 AM, Collins began singing: "money money money money money money."

**ANSWERING PARAGRAPH NO. 126**: Lack knowledge as to the time reference

contained therein, and therefore, deny the same; admit the remaining allegations contained

therein.

127. While still on the telephone, Defendant Collins stated that the Defendants were fighting Mr. Brown, and that Defendant Samardzic tasered Mr. Brown. Defendant Collins then made a noise that sounded like an electric shock, and began to cackle with

29

laughter yet again.

**ANSWERING PARAGRAPH NO. 127**:  Deny allegations as a mischaracterization of the facts and affirmatively assert that the video footage from the officers' body worn cameras speaks for itself.

128.    As evident on his BWVC, a few minutes following this telephone call, Defendant Collins fell asleep on the job collecting taxpayer paid overtime pay for his involvement in the  unlawful arrest and abuse of Mr. Brown.

**ANSWERING PARAGRAPH NO. 128**:  Deny the allegations contained therein.

129.    Mr. Collins slept in his car between 03:38:30 AM and 03:50:35 AM, while Mr. Brown remained in custody.

**ANSWERING PARAGRAPH NO. 129**:

130.    After waking up, Defendant Collins proceeded to enter the Walgreens to retrieve  security camera footage. At about 04:01:05 AM, Defendant Collins told a Walgreens employee  that Mr. Brown "was a douchebag."

**ANSWERING PARAGRAPH NO. 130**:  Deny allegations as a mischaracterization of the facts and affirmatively assert that the video footage from the officers' body worn cameras speaks for itself.

131.    On information and belief, while Mr. Brown remained in police custody or shortly  after his release, Defendant Andrade took to facebook to mock and laugh at Mr. Brown:



**ANSWERING PARAGRAPH NO. 131**: Deny the allegations contained therein and

further assert that the Facebook postings speak for themselves.

132. On Monday, May 21, 2018 Defendant Morales filed a complaint with the Board of Fire and Police Commissioners of the City of Milwaukee against Defendant Mahnke. This document is attached hereto as Exhibit A and incorporated by reference.

**ANSWERING PARAGRAPH NO. 132**: Admit that such a complaint was filed and

affirmatively assert that the document speaks for itself.

133. Defendant Morales' Complaint constitutes an admission that Defendant Grams should have issued a traffic citation and that Mr. Brown should have been free to go with citation in hand. Mahnke was disciplined for not properly taking control of the situation.

**ANSWERING PARAGRAPH NO. 133**: The allegations contained therein are legal

conclusions to which no answer is required; in the event that the Court determines that the

allegations require a response, lack knowledge or information sufficient so as to form a belief as

to the truth of the allegations contained therein. Furthermore, affirmatively assert that the

document speaks for itself.

134. However, Defendant Morales' complaint, in relevant part, either explicitly or implicitly, adopts the fabricated version of events the other Defendants agreed to following their unlawful conduct, including that:

31

- Mr. Brown was part of a "verbal altercation" that required Defendant Grams to call for backup.
- Officers believed Mr. Brown was in possession of a firearm based upon observation of shooting targets in the vehicle.
- Mr. Brown was placed into custody after he refused to comply with a directive to remove his hands from his pockets and became resistive towards officers.
- Officers utilized force on Mr. Brown by decentralizing him to the ground and eventually an Electronic Control Device was deployed to control him prior to his arrest.

**ANSWERING PARAGRAPH NO. 134:** Deny the allegations contained therein.

Furthermore, affirmatively assert that the document speaks for itself.

135.    However, the Morales complaint never mentions that the BWVC recordings show, among others, that:

- Mr. Brown was first shoved by Grams yet still fully cooperated with the MPD officers.
- Defendants observed Mr. Brown for many minutes while his hands were in and out of his pockets and that Mr. Brown was actually attempting to remove his hands from his pockets after Defendants Krueger and Mahnke had initiated their scheme to use excessive force against him;
- Defendant Samardzic pulled out his pistol before Mr. Brown was taken to the ground;
- Defendant Grams jumped on Mr. Brown's leg after he was shot in the back with a Taser;
- Defendant Samardzic shot Mr. Brown in the back with the Taser while both of his arms were under the complete physical control of Defendants Krueger and Avila;
- Defendants used thinly-veiled racist comments at the scene;
- Defendant Collins repeatedly called Mr. Brown a douchebag;
- Defendant Collins slept collecting overtime while Mr. Brown remained locked up in jail;
- Defendant Krueger admitted the Defendants: "we're trying to protect ourselves."

**ANSWERING PARAGRAPH NO. 135:** Deny the allegations contained therein.

Furthermore, affirmatively assert that the document speaks for itself.

136.    On Wednesday, May 23, 2018, Defendant Morales addressed the media and stated that: "The department conducted an investigation into the incident, which revealed members acted inappropriately."

**ANSWERING PARAGRAPH NO. 136**: Admit that Defendant Morales made a

statement on May 23, 2018 via a press release, however, deny that the allegation is a full,

complete, and correct citation or explanation as to the content or effect of the document. As

such, lack information and knowledge necessary to form a belief as to the truth or falsity of the

remaining allegations, and therefore deny the same.

137.    Shortly thereafter, Defendant Morales and/or the MPD publicly disclosed that at least three Defendant officers received discipline from the MPD for their conduct, described above. The discipline, included, but is not limited to:

- Defendant Mahnke:           15-day suspension, employee improvement plan
- Defendant Krueger:           10-day suspension, employee improvement plan
- Defendant Samardzic:         2-day suspension, employee improvement plan
- Other involved officers are required to review the MPD policy on cooperating with citizens to ensure public safety.

**ANSWERING PARAGRAPH NO. 137**: Admit that Defendant Morales made a

press release statement on May 25, 2018 releasing discipline information and advising that the

names of the disciplined officers could be requested through a public records request.

138.    Chief Morales' investigation and disciplinary actions were not complete and incompetent and/or constitute an attempted cover up of the Defendants' unlawful conduct because, to date but recognizing that the Fire and Police Commissioners have demanded an audit and accounting from the Chief, no MPD officer has been disciplined for, among others:

- Mr. Brown's unlawful and race based arrest and detention.
- The excessive use of force, including being kneed in the groin, injuring Mr. Brown's neck and face, being tased, being stamped on, having his ankle stepped on for 2¾ minutes, being handcuffed, and forced to lay and sit on cold wet pavement for 12 minutes.

**ANSWERING PARAGRAPH NO. 138**: Deny the allegations contained therein.

139.    On information and belief, before the public announcement of the aforementioned disciplinary procedures, Defendant Andrade had used his facebook account to share racist memes, including one with a picture of NBA Superstar, Kevin Durant:

33



**ANSWERING PARAGRAPH NO. 139**:  Deny the allegations contained therein and further assert that the Facebook postings speak for themselves.

140.    On information and belief, Defendant Andrade also used his facebook account to  share a post from an account that alleged that the African Americans lie to the police. Defendant  Andrade said that this post was "truth." The particular post included an image of Mr. Brown:



**ANSWERING PARAGRAPH NO. 140**:

141.    On information and belief, Defendant Andrade also used his facebook account to  celebrate overtime pay accompanying the use of force:



**ANSWERING PARAGRAPH NO. 141**:  Deny the allegations contained therein and

further assert that the Facebook postings speak for themselves.

142.     On information and belief, Defendant Andrade made comments via his facebook  account regarding innocent African Americans, police brutality, and mass incarceration:



**ANSWERING PARAGRAPH NO. 142**: Assert that the Facebook postings speak for themselves; in the event that the Court determines that the allegations require a response, lack knowledge or information sufficient so as to form a belief as to the truth of the allegations contained therein.

143.     On information and belief, Defendant Andrade also used his facebook account to  publicly engage with others regarding Mr. Brown's arrest, an arrest he unlawfully participated in  and presumably has been trained to not engage the public about such matters:



**ANSWERING PARAGRAPH NO. 143**:  Deny the allegations contained therein and further assert that the Facebook postings speak for themselves.

144.    On May 31, 2018, Earl Joseph "J.R." Smith III, known widely as J.R. Smith, played for the Cleveland Cavaliers in Game 1 of the NBA Finals. Nearing the end of regulation, Mr. Smith rebounded a missed free throw while the game was tied, and let the clock run out to force overtime. The Cavaliers lost in overtime.

**ANSWERING PARAGRAPH NO. 144**: Admit the allegations contained therein.

145.    On information and belief, after Game 1 of the NBA Finals, Defendant Andrade  once again took to Facebook to explain that he believed Mr. Smith deserved to be punished for  this performance:

37



**ANSWERING PARAGRAPH NO. 145**: Deny the allegations contained therein and

further assert that the Facebook postings speak for themselves.

146.   Defendant Andrade's post is an admission that he and other Defendant
officers are allowed to engage in unlawful attacks and arrests of African Americans without
justification  and then relish such events without any fear of real discipline.

**ANSWERING PARAGRAPH NO. 146**: The allegations contained therein are legal

conclusions to which no answer is required; in the event that the Court determines that the

allegations require a response, deny the allegations contained therein and further assert that the

Facebook postings speak for themselves.

147.   Upon information and belief, the public announcement by Defendants
Milwaukee and Morales of the discipline of the defendants in this action predate this
facebook post by Defendant Andrade.

**ANSWERING PARAGRAPH NO. 147**: Because there is no date on the Facebook

posting referenced in this allegation, lack knowledge or information sufficient so as to form a

belief as to the truth of the allegations contained therein, and therefore, deny the same.

148.   Defendant Andrade's facebook posts are admissions that Defendant officers
and  other MPD officers exacerbate parking tickets, unjustly stop and arrest, and use
unlawful force  against African Americans in Milwaukee without fear of real discipline.

38

**ANSWERING PARAGRAPH NO. 148**:  The allegations contained therein are legal conclusions to which no answer is required; in the event that the Court determines that the allegations require a response, deny the allegations contained therein and further assert that the Facebook postings speak for themselves.

149.    Thus, regardless of any disciplinary response to date, Defendant officers, including Defendant Andrade, remain uninhibited to engage in the type of unjust violence and  deprivation of Constitutional rights that Mr. Brown was forced to suffer on January 26, 2018.

**ANSWERING PARAGRAPH NO. 149**:  The allegations contained therein are legal conclusions to which no answer is required; in the event that the Court determines that the allegations require a response, deny the allegations contained therein and further assert that the Facebook postings speak for themselves.

150.    As a result of the unlawful conduct by the Defendants as set forth herein, Sterling D. Brown feared for his life, sustained severe physical and emotional injuries and suffered other losses and damages, including severe pain, emotional distress, medical expenses, and other  compensable injuries and damages, in an amount to be determined at a trial of this matter.

**ANSWERING PARAGRAPH NO. 150**:  The allegations contained therein are legal conclusions to which no answer is required; in the event that the Court determines that the allegations require a response, deny the allegations contained therein and further assert that the Facebook postings speak for themselves.

151.    The conduct, as alleged above and below, of Defendants, and against Mr. Brown,  took place in substantial part because Mr. Brown is African American.

**ANSWERING PARAGRAPH NO. 151**:  Deny the allegations contained therein.

## V. FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS – VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

152.    Plaintiff realleges and incorporates by reference the allegations of all the

preceding paragraphs.

**ANSWERING PARAGRAPH NO. 152**: Reallege and incorporate herein by

reference as though fully set for herein the defendants' answers to all of the preceding

paragraphs.

153. At all relevant times herein, the above-named Defendants, were "persons" for purposes of 42 U.S.C. § 1983 and acted under color of state law to deprive Mr. Brown of his constitutional rights.

**ANSWERING PARAGRAPH NO. 153**: The allegations contained therein are legal

conclusions to which no answer is required; in the event that the Court determines that the

allegations require a response, deny any wrongdoing.

154. The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

**ANSWERING PARAGRAPH NO. 154**: The allegations contained therein are legal

conclusions to which no answer is required.

155. Defendants violated Mr. Brown's right to equal protection of the laws under the Fourteenth Amendment, by unlawfully discriminating against Mr. Brown on the basis of his race when they, among other things, instead of issuing a parking citation, they stopped and questioned Mr. Brown for an extended period of time about an alleged parking violation, and then utilized unlawful and excessive force against Mr. Brown as they arrested Mr. Brown and further unlawfully detained him.

**ANSWERING PARAGRAPH NO. 155**: Deny the allegations contained therein.

156. Defendants violated Mr. Brown's right to equal protection of the laws under the Fourteenth Amendment through omission as well. Each Defendant officer on the scene had a duty to intervene on behalf of Mr. Brown, whose constitutional rights were being violated in the presence of the Defendant officers, by others acting under color of state law.

**ANSWERING PARAGRAPH NO. 156**: Deny the allegations contained therein.

157. The Defendant Officers each failed to intervene or take any other reasonable steps to prevent the deprivation of Mr. Brown's rights by fellow MPD officers.

**ANSWERING PARAGRAPH NO. 157**: Deny the allegations contained therein.

158.    Based upon the racially-motivated comments made by Defendants at the scene as  well as their conduct, such conduct was motivated by an unlawful discriminatory purpose.

**ANSWERING PARAGRAPH NO. 158**:  Deny the allegations contained therein.

159.    Their unlawful conduct achieved a discriminatory effect against Mr. Brown.

**ANSWERING PARAGRAPH NO. 159**:  The allegations contained therein are legal

conclusions to which no answer is required; in the event that the Court determines that the

allegations require a response, deny any wrongdoing.

160.    At all times material, the individual Defendants were acting under color of the statutes, customs, ordinances, and usage of the Milwaukee and MPD and were acting in  the  scope of their employment.

**ANSWERING PARAGRAPH NO. 160**:  The allegations contained therein are legal

conclusions to which no answer is required.

161.    That the described conduct of the part of the Defendants as set forth above was a  cause of the plaintiff's injuries, losses, and damages as set forth herein.

**ANSWERING PARAGRAPH NO. 161**:  Deny the allegations contained therein.

162.    The Defendant, Milwaukee, is liable pursuant to Wis. Stat. § 895.46 for payment  of any judgment entered against the individual employee Defendants in this action because said  Defendants were acting within the scope of their employment when they committed the  acts  described above.

**ANSWERING PARAGRAPH NO. 162**:  The allegations contained therein are legal

conclusions to which no answer is required.

### VI. SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS GRAMS, KRUEGER,  MAHNKE, SAMARDZIC, AVILA, AND COLLINS – EXCESSIVE FORCE

163.    Plaintiff realleges and incorporates by reference the allegations of all the preceding paragraphs.

**ANSWERING PARAGRAPH NO. 163**:  Reallege and incorporate herein by

reference as though fully set for herein the defendants' answers to all of the preceding

paragraphs.

164.     At all relevant times herein, the above-named Defendants were "persons" for purposes of 42 U.S.C. § 1983 and acted under color of state law to deprive Mr. Brown of his constitutional rights.

**ANSWERING PARAGRAPH NO. 164**: The allegations contained therein are legal

conclusions to which no answer is required; in the event that the Court determines that the

allegations require a response, deny any wrongdoing.

165.     At all times material hereto, the Defendants used unnecessary, excessive force, including but not limited to, grabbing, tackling, injuring his neck and face, kneeling him in the groin, deploying the taser to Mr. Brown's back while he was subdued on the ground, stomping on him and standing on his ankle.

**ANSWERING PARAGRAPH NO. 165**: Deny the allegations contained therein.

166.     That at the time the Defendants used excessive force there was no threat of death or serious bodily harm to the officers or anyone in the area.

**ANSWERING PARAGRAPH NO. 166**: Deny the allegations contained therein.

167.     That the Defendants' conduct constituted excessive force without cause or justification in violation of Mr. Brown's Fourth Amendment Rights as incorporated by the Fourteenth Amendment and/or his equal protection rights guaranteed by that same Amendment.

**ANSWERING PARAGRAPH NO. 167**: The allegations contained therein are legal

conclusions to which no answer is required; in the event that the Court determines that the

allegations require a response, deny any wrongdoing.

168.     At all times material, the Defendants were MPD Officers acting under color of the statutes, customs, ordinances, and usage of the Milwaukee and MPD and were acting in the scope of their employment.

**ANSWERING PARAGRAPH NO. 168**: The allegations contained therein are legal

conclusions to which no answer is required.

169.     That the described conduct of the part of the Defendants as set forth above was a cause of the plaintiff's injuries, losses, and damages as set forth herein.

**ANSWERING PARAGRAPH NO. 169**: Deny the allegations contained therein.

170. The Defendant, Milwaukee, is liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against the individual employee Defendants in this action because said Defendants were acting within the scope of their employment when they committed the acts described above.

**ANSWERING PARAGRAPH NO. 170**: The allegations contained therein are legal conclusions to which no answer is required; in the event that the Court determines that the allegations require a response, deny any wrongdoing.

### VII. THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS GRAMS, KRUEGER, MAHNKE, SAMARDZIC, AVILA, COLLINS, ANDRADE, AND JENSEN – UNLAWFUL ARREST

171. Plaintiff realleges and incorporates by reference the allegations of all the preceding paragraphs.

**ANSWERING PARAGRAPH NO. 171**: Reallege and incorporate herein by reference as though fully set for herein the defendants' answers to all of the preceding paragraphs.

172. At all relevant times herein, the above-named Defendants were "persons" for purposes of 42 U.S.C. § 1983 and acted under color of state law to deprive Mr. Brown of his constitutional rights.

**ANSWERING PARAGRAPH NO. 172**: The allegations contained therein are legal conclusions to which no answer is required; in the event that the Court determines that the allegations require a response, deny any wrongdoing.

173. Defendants arrested Mr. Brown.

**ANSWERING PARAGRAPH NO. 173**: Affirmatively assert that Defendant Grams was the arresting officer.

174. Defendants did not have probable cause to arrest Mr. Brown because at no time could Mr. Brown's actions have lead any of the Defendants to reasonably believe that

43

probable cause existed that Mr. Brown committed a crime.

**ANSWERING PARAGRAPH NO. 174**: Deny the allegations contained therein

175. That the Defendants' conduct constituted a false arrest or unreasonable seizure and search of his vehicle in violation of Mr. Brown's Fourth Amendment Rights as incorporated by the Fourteenth Amendment and/or his equal protection rights guaranteed by that same Amendment.

**ANSWERING PARAGRAPH NO. 175**: The allegations contained therein are legal conclusions to which no answer is required; in the event that the Court determines that the allegations require a response, deny any wrongdoing.

176. At all times material, the Defendants were MPD Officers acting under color of the statutes, customs, ordinances, and usage of the Milwaukee and MPD and were acting in the scope of their employment.

**ANSWERING PARAGRAPH NO. 176**: The allegations contained therein are legal conclusions to which no answer is required.

177. That the described conduct of the part of the Defendants as set forth above was a cause of the plaintiff's injuries, losses, and damages as set forth herein.

**ANSWERING PARAGRAPH NO. 177**: Deny the allegations contained therein.

178. The Defendant, Milwaukee, is liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against the individual employee Defendants in this action because said Defendants were acting within the scope of their employment when they committed the acts described above.

**ANSWERING PARAGRAPH NO. 178**: The allegations contained therein are legal conclusions to which no answer is required; in the event that the Court determines that the allegations require a response, deny any wrongdoing.

## VIII. FOURTH CLAIM FOR RELIEF – SECTION 1983 FAILURE TO INTERVENE

179. Plaintiff realleges and incorporates by reference the allegations of all the preceding paragraphs.

**ANSWERING PARAGRAPH NO. 179**: Reallege and incorporate herein by

reference as though fully set for herein the defendants' answers to all of the preceding

paragraphs.

180. By the time Defendants Grams, Krueger, Mahnke, Samardzic, Avila, Collins, Andrade, and Jensen all arrived on the scene, Mr. Brown had committed no crime and there was no reason to suspect that he was about to commit a crime, or in the process of committing any crime. At most, a parking citation would have ended the matter.

**ANSWERING PARAGRAPH NO. 180**: The allegations contained therein are legal

conclusions to which no answer is required; in the event that the Court determines that the

allegations require a response, deny the allegations contained therein.

181. Before Mr. Brown suffered from the unlawful abuse and excessive use of force described above, the individual Defendants individually and collectively, had many opportunities to intervene and prevent all the injuries and losses Mr. Brown suffered as a result of the unlawful conduct and excessive use of force.

**ANSWERING PARAGRAPH NO. 181**: The allegations contained therein are legal

conclusions to which no answer is required; in the event that the Court determines that the

allegations require a response, deny the allegations contained therein.

182. Before Mr. Brown suffered from an arrest without probable cause, as described above, the individual Defendants had many opportunities to intervene and prevent the injuries Mr. Brown suffered as a result of the unlawful arrest without probable cause.

**ANSWERING PARAGRAPH NO. 182**: The allegations contained therein are legal

conclusions to which no answer is required; in the event that the Court determines that the

allegations require a response, deny the allegations contained therein.

183. At the moment Mr. Brown was ordered to be tased while already incapacitated, as described more fully above, some of the Defendant Officers including Samardzic himself could have intervened to prevent any of Mr. Brown's injuries and constitutional deprivations.

**ANSWERING PARAGRAPH NO. 183**: The allegations contained therein are legal

45

conclusions to which no answer is required; in the event that the Court determines that the

allegations require a response, deny the allegations contained therein.

184.    The unlawful misconduct described in this claim was also undertaken pursuant to the defacto policy and practice of the City of Milwaukee as described below.

**ANSWERING PARAGRAPH NO. 184**: The allegations contained therein are legal

conclusions to which no answer is required; in the event that the Court determines that the

allegations require a response, deny the allegations contained therein.

185.    As a result of the individual Defendant Officers' failure to intervene, and the Milwaukee and MPD policies and practices, written or otherwise, Mr. Brown suffered injuries,  losses and damages as set forth herein.

**ANSWERING PARAGRAPH NO. 185**: Deny the allegations contained therein.

186.    The Defendant Milwaukee is liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against the individual employee Defendants in this action because said Defendants were acting within the scope of their employment when they committed the acts  described above.

**ANSWERING PARAGRAPH NO. 186**: The allegations contained therein are legal

conclusions to which no answer is required; in the event that the Court determines that the

allegations require a response, deny any wrongdoing.

## IX. FIFTH CLAIM FOR RELIEF – MONELL CLAIM

187.    Plaintiff realleges and incorporates by reference the allegations in the preceding  paragraphs.

**ANSWERING PARAGRAPH NO. 187**: Reallege and incorporate herein by

reference as though fully set for herein the defendants' answers to all of the preceding

paragraphs.

188.    The acts of the individual Defendants, including unlawfully arresting and tasing Mr. Brown without any justification, was done in accordance with the Milwaukee and its Police  Department's de-facto policy, regulation, decision or custom condoning excessive force in  executing arrests, false arrests, and/or otherwise violating person's equal protection rights,  including by the City's or in this case to date, Defendant Morales', failure to

46

adequately discipline the Defendant officers for such violations. That these respective de-facto policies were officially adopted, expressly or implicitly, or promulgated or practiced or ratified by the Milwaukee, through its Chief of Police Morales, and as such constitute a de-facto governmental custom in such department, even though such custom may not have received written formal approval by the City, and even though such de-facto policies are inconsistent with or even violate MPD's written policies.

**ANSWERING PARAGRAPH NO. 188**: The allegations contained therein are legal

conclusions to which no answer is required; in the event that the Court determines that the

allegations require a response, deny the allegations contained therein.

189. This official or de facto policy or custom of utilizing excessive force and/or violating person's equal protection rights permitted, encouraged, tolerated and ratified the actions of Defendants Grams, Mahnke, Krueger, Samardzic, Avila, Collins, Andrade, and Jensen all in malicious or reckless disregard or with deliberate indifference to Mr. Brown's Fourth and Fourteenth Amendment Rights by, among others, the Defendant Chief's failure to adequately discipline the officers for their unlawful conduct and not just for failing to supervise the situation as in the Mahnke discipline.

**ANSWERING PARAGRAPH NO. 189**: The allegations contained therein are legal

conclusions to which no answer is required; in the event that the Court determines that the

allegations require a response, deny the allegations contained therein.

190. That this official or de-facto policy and custom of utilizing excessive force and/or violating person's equal protection rights arose and/or was allowed to continue as a result of, among others, the Milwaukee and the MPD's failure to adequately supervise, discipline, and/or train its employees. Upon information and belief, some or all of the individual Defendants and other MPD officers had previously used Tasers in an unjustified and excessive manner, or had executed arrests against individuals in an unjustified manner, without being adequately disciplined and/or properly trained.

**ANSWERING PARAGRAPH NO. 190**: The allegations contained therein are legal

conclusions to which no answer is required; in the event that the Court determines that the

allegations require a response, deny the allegations contained therein.

191. That the described conduct on the part of all the Defendants, including Milwaukee Chief of Police Morales, in his official capacity, was a cause of the plaintiff's injuries, losses and damages as set forth herein.

**ANSWERING PARAGRAPH NO. 191**: Deny the allegations contained therein.

47

192.   The Defendant Milwaukee is liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against the individual employee Defendants in this action because said Defendants were acting within the scope of their employment when they committed the acts described above.

**ANSWERING PARAGRAPH NO. 192**: The allegations contained therein are legal

conclusions to which no answer is required; in the event that the Court determines that the

allegations require a response, deny any wrongdoing.

## X. SEVENTH CLAIM FOR RELIEF

193.   Plaintiff realleges and incorporates by reference all the allegations in the preceding paragraphs.

**ANSWERING PARAGRAPH NO. 193**: Reallege and incorporate herein by

reference as though fully set for herein the defendants' answers to all of the preceding

paragraphs.

194.   That the above-described conduct of all the individual Defendants was unlawful, extreme, malicious, outrageous and/or intentional.

**ANSWERING PARAGRAPH NO. 194**: The allegations contained therein are legal

conclusions to which no answer is required; in the event that the Court determines that the

allegations require a response, deny the allegations contained therein.

195.   That such conduct was intended to cause Mr. Brown unnecessary and severe personal physical and psychological and emotional injuries.

**ANSWERING PARAGRAPH NO. 195**: The allegations contained therein are legal

conclusions to which no answer is required; in the event that the Court determines that the

allegations require a response, deny the allegations contained therein.

196.   That such conduct on the part of all the individual Defendants was a cause of the severe personal injuries, physical and psychological and emotional, suffered by Mr. Brown.

**ANSWERING PARAGRAPH NO. 196**: Deny the allegations contained therein.

197.   At all times material hereto, the individual Defendants acted maliciously

and/or with reckless disregard and/or with deliberate indifference towards Mr. Brown or in an intentional disregard of his rights, such as to subject all the individual Defendants to punitive damages.

**ANSWERING PARAGRAPH NO. 197**: The allegations contained therein are legal conclusions to which no answer is required; in the event that the Court determines that the allegations require a response, deny the allegations contained therein.

198. The Defendant Milwaukee is liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against this individual employee Defendant in this action because said Defendant was acting within the scope of his employment when he committed the acts described above.

**ANSWERING PARAGRAPH NO. 198**: The allegations contained therein are legal conclusions to which no answer is required; in the event that the Court determines that the allegations require a response, deny any wrongdoing.

### AFFIRMATIVE DEFENSES

AS AND FOR AFFIRMATIVE DEFENSES, Defendants allege and state to the Court as follows:

In reference to the federal claims alleged:

1. The plaintiff's complaint fails to state a claim against the defendants upon which relief can be granted.

2. The defendants sued in their individual capacities are immune from trial and liability under the doctrine of qualified immunity because they acted in good faith, without malice or intent to harm, and their conduct did not violate a clearly established constitutional law or statutory right which a reasonable person would have known.

3. The plaintiff's injuries, if any, were not caused by any policy, practice, or custom of the City of Milwaukee or any of its officers, agents, or employees acting in their individual or official capacities.

49

4.  No punitive damages may be awarded against the City of Milwaukee or any of its officers, agents, or employees acting in their official capacity, *Newport v. Fact Concert, Inc.*, **453 U.S. 247 (1981)**.

5.  The injuries and damages sustained by the plaintiff, if any, were caused in whole or in part by their own acts or omissions or their failure to mitigate or the acts and omission of persons other than these answering defendants.

6.  One or more of plaintiff's claims may be barred by judicial doctrines known as *Heck v. Humphrey*, **512 U.S. 477, 487 (1994)**, *Younger v. Harris*, **401 U.S. 37 (1971)**, or *Rooker v. Fidelity Trust Co.*, **263 U.S. 413, (1923)** and *District of Columbia Court of Appeals v. Feldman*, **460 U.S. 462 (1983)**.

7.  These answering defendants may be protected by immunities including qualified immunity.

To the extent any state law claims are made:

8.  Any claims under Wisconsin state law are subject to the limitations, prerequisites, and immunities contained within Wis. Stat. § 893.80, including notice, damages cap, and the bar against punitive damages.

9.  The plaintiff's complaint fails to state a claim against the defendants upon which relief can be granted.

10. The plaintiff's negligence acts as a bar in part or whole to any negligence claim against the defendants under state law.

11. The plaintiff's acts constitute a supervening and interceding cause of his damages and are therefore a bar to any claim under state law.

12. The injuries and damages sustained by the plaintiff, if any, were caused in whole or in part by their own acts or omissions or their failure to mitigate or the acts and omission of persons other than these answering defendants.

The defendants reserve all other affirmative defenses which may be waived if not pled and the right to amend this Answer to assert additional defenses as discovery proceeds.

**JURY DEMAND**

The answering defendants, hereby demand a trial by jury.

WHEREFORE, the defendants, hereby demand judgment as follows:

1.      Dismissal of the plaintiff's complaint on its merits, together with costs and disbursements herein; and

2.      Such other and further relief as the Court may deem just and equitable.

Dated at Milwaukee, Wisconsin this 24th day of August, 2018.

GRANT F. LANGLEY
Milwaukee City Attorney


s/ Naomi E. Gehling
Assistant City Attorney
State Bar No. 1061388
Elleny B. Christopoulos
Assistant City Attorney
State Bar No. 1105495
Attorneys for Defendants

P.O. ADDRESS:
800 City Hall
200 East Wells Street
Milwaukee, WI 53202
(414) 286-2601
Fax: (414) 286-8550
E-Mail: ngehli@milwaukee.gov
          echris@milwaukee.gov